UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CARLOS ESTEBAN SEVERINO,     Petitioner,

v.     Civil Action No. 4:25-cv-124-DJH

MIKE LEWIS, Jailer, Hopkins County Jail
and SAMUEL OLSON, Field Office Director,
Chicago Field Office, U.S. Immigration and
Customs Enforcement,     Respondents.

\* \* \* \* \*

## MEMORANDUM AND ORDER

Petitioner Carlos Esteban Severino is a noncitizen resident of Illinois currently detained in the Western District of Kentucky. Severino seeks a writ of habeas corpus pending removal proceedings, alleging that his detention by immigration authorities without a bond hearing violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. (Docket No. 1) The Court granted the parties' joint motion to forgo a show-cause hearing given the absence of a factual dispute (D.N. 10), and the parties have submitted briefs setting out their respective legal arguments (D.N. 11, D.N. 13), with the respondents moving to dismiss for lack of jurisdiction. (D.N. 11) After careful consideration, the Court will deny Respondents' motion and grant Severino's petition for the reasons given below.

**I.**

Severino "is a native and citizen of Mexico." (D.N. 1, PageID.4 ¶ 17) Around December 1, 1994, he entered the United States near San Diego, California, without having been admitted by an immigration officer and has resided in the United States since that time. (D.N. 11-1, PageID.73; D.N. 1, PageID.4 ¶ 17) He has two U.S. citizen children and no criminal history. (D.N. 1, PageID.4 ¶ 17; D.N. 11-1, PageID.74) Severino was apprehended on October 8, 2025, in

1

Waukegan, Illinois.[1]  (D.N. 11-1, PageID.72–73)  According to the government's "Record of Deportable/Excludable Alien" submitted with Respondents' brief, a Border Patrol agent noticed "several people in the street behind a truck and trailer parked on the side of the road"; after the agent "attempted to engage in conversation with the individuals standing behind the trailer," Severino and one other member of the group began to run away. (*Id.*, PageID.73)  The agent pursued Severino, who "disregarded [the agent's] command for him to stop" in English and Spanish.  (*Id.*)  The agent "secured [Severino] in handcuffs and asked him why he ran" away.  (*Id.*)  Severino stated that he "had papers," but he did not "produce any immigration documents."  (*Id.*)  The agent concluded that Severino "had lied . . . about his legal presence in the United States" after Severino was "unable to answer several basic follow[-]up questions about his immigration status."  (*Id.*)  Severino did have an identification card issued by the Mexican government.  (*Id.*)  The agent used biographical information on the card to search "numerous" Department of Homeland Security databases regarding Severino's "claim to being in the United States legally."  (*Id.*)  The search results were "contradictory to [Severino]'s claim of having legal status in the United States," and the agent found that Severino "did not have any documentation associated to his identity which would allow him to enter, be in, or pass through the United States legally."  (*Id.*)  The agent asked Severino "one last time if he was in the United States illegally."  (*Id.*)  Severino replied, "[Y]es."  (*Id.*)

The agent informed Severino that "he was under arrest pursuant to Title 8 of the United States Code for violating U.S. immigration law."  (*Id.*)  The agent "determined that [Severino] was likely to escape before a warrant could be obtained for his arrest, based on his flight from law

---

[1] Although Respondents state that Severino was apprehended on October 9, 2025 (D.N. 11, PageID.46), the government's "Record of Deportable/Excludable Alien" states that Severino was apprehended on October 8, 2025.  (*See* D.N. 11-1, PageID.72–73)

enforcement, the fact that he ignored agent commands, [and] his illegal presence in the United States." (*Id.*)  Upon questioning, Severino stated that he "ha[d] no other applications or petition that would afford him the right to enter or remain in the United States." (*Id.*)

An arrest warrant was issued the same day authorizing Severino's detention under section 236 of the Immigration and Nationality Act.[2]  (D.N. 11-4, PageID.81)  Severino was transported to a U.S. Immigration and Customs Enforcement (ICE) facility in Broadview, Illinois. (D.N. 11, PageID.46–47)  On October 9, 2025, he was placed in removal proceedings and was issued a Notice to Appear before an immigration judge on October 29, 2025.  (D.N. 11-2, PageID.76)  Additionally, Severino was charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as an "alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General"; and under § 1182(a)(7)(A)(i)(I) as an immigrant who was "not in possession of a valid unexpired immigrant visa . . . or other valid entry document."[3]  (*Id.*, PageID.79)  On the same day he received the Notice to Appear, Severino signed a "Request for Disposition" in which he requested "a hearing before the Immigration Court to determine whether [he] may remain in the United States." (D.N. 11-3, PageID.80)

Severino remains detained at the Hopkins County Jail pending removal proceedings. (D.N. 1, PageID.3 ¶ 13; *id.*, PageID.4 ¶ 20)  He seeks a writ of habeas corpus against Hopkins County Jailer Mike Lewis and Chicago ICE Field Office Director Samuel Olson. (*Id.*, PageID.3 ¶¶ 14–15)  Severino requests immediate release and asks the Court to schedule a bond hearing for

---

[2] Section 236 is codified at 8 U.S.C. § 1226.  *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *1 n.1 (W.D. Ky. Sep. 19, 2025).  The Court uses United States Code citations in this Memorandum and Order.
[3] The government form refers to § 212 of the Immigration and Nationality Act, which is codified at 8 U.S.C. § 1182.  *Kilic v. Barr*, 965 F.3d 469, 472 (6th Cir. 2020).

his removal proceedings pursuant to 8 U.S.C. § 1226(a). (*See id.*, PageID.16; *see also id.*, PageID.15–16 ¶ 11) He also argues that his detention violates due process. (*See id.*, PageID.14) Respondents maintain that (1) the Court lacks jurisdiction to hear the habeas petition and thus should dismiss it; (2) the Court should require Severino to exhaust his administrative remedies; (3) Severino is lawfully detained under 8 U.S.C. § 1225(b)(2) in mandatory detention; (4) his detention does not violate due process pursuant to § 1225(b)(2); and (5) even if the Court determines that § 1226(a) authorizes Severino's detention, the statute does not permit him to be released before receiving a bond hearing before an immigration judge. (*See* D.N. 11, PageID.52–69)

## II.

### A.     Jurisdiction

Respondents move to dismiss the habeas petition on the ground that the Court lacks jurisdiction to hear Severino's claims.[4] (*See id.*, PageID.52–58) "A district court may grant a writ of habeas corpus to an individual 'in custody in violation of the Constitution or laws . . . of the United States.'" *Lopez v. Olson*, No. 3:25-cv-654-DJH, 2025 WL 3217036, at *2 (W.D. Ky. Nov. 18, 2025) (quoting 28 U.S.C. § 2241(c)(3)). Section 2241 authorizes courts to hear habeas corpus challenges to the legality of a noncitizen's detention. *See Rasul v. Bush*, 542 U.S. 466, 483–84 (2004); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Although the Court "may not review discretionary decisions made by immigration authorities, it may review immigration-related

---

[4] Respondents move to dismiss specifically on this ground. (*See* D.N. 11, PageID.45) But "[a] motion to dismiss is not contemplated under the [h]abeas [r]ules" because "such a motion is effectively duplicative of an [a]nswer to a [p]etition, in which all relevant arguments that could be made on such a motion can and should be made." *Maldonado v. Baker*, No. 25-3084-TDC, 2025 WL 2968042, at *11 (D. Md. Oct. 21, 2025) (explaining why a federal district court "ordinarily does not apply Federal Rule of Civil Procedure 12, which governs the filing of a motion to dismiss, to a habeas petition"). Because the Court finds that it has jurisdiction here, the motion to dismiss will "necessarily be denied as to" that issue. *Id.*

4

detentions to determine if they comport with the demands of the Constitution." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020) (citing *Zadvydas*, 533 U.S. at 688).

Respondents first contend that the Court lacks jurisdiction under 8 U.S.C. § 1252(g). (*See* D.N. 11, PageID.52–54)  They argue that the "decision to detain [Severino] arose from the commencement of his removal proceedings" and thus bars review of his claims. (*Id.*, PageID.52)  The Court previously rejected this argument in a nearly identical matter.  *See Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920, at *2 (W.D. Ky. Nov. 4, 2025).  The Court noted in *Alonso* that § 1252(g)'s jurisdictional bar is "narrow" and limited to the three actions listed in that provision: commencing proceedings, adjudicating cases, and executing removal orders.  *Id.* (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999)).  It specifically observed that a "claim of unlawful detention does not arise from the commencement of removal proceedings 'within the meaning of § 1252(g) simply because the claim[] relate[s] to that discretionary, prosecutorial decision.'"  *Id.* (alterations in original) (quoting *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025)).  Here, Severino asks the Court to review his detention without the opportunity for a bond hearing (*see* D.N. 1, PageID.15 ¶ 6), which § 1252(g) does not prohibit.  *Alonso*, 2025 WL 3083920, at *2–3.  Respondents "acknowledge that Section 1252(g) does not cover 'all claims' arising from decisions to commence proceedings, adjudicate cases, or execute removal orders." (D.N. 11, PageID.54 (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020)))  Yet they argue that "[d]eciding that Section 1252(g) only revokes the Court's jurisdiction over the . . . ultimate decision to commence proceedings, adjudicate cases, or [execute] removal orders renders the provision 'arising from' superfluous." (*Id.*)  The Court disagrees in light of the Supreme Court's narrow reading of the phrase "arising from" in that provision.  *Reno*, 525 U.S. at 482; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294

(2018) ("[W]e read the language [in § 1252(g)] to refer to just those three specific actions themselves." (citing *Reno*, 525 U.S. at 482–83)).[5]

Respondents also contend that § 1252(b)(9) bars the Court from exercising jurisdiction here. (*See* D.N. 11, PageID.54–58) Section 1252(b) states that

> [w]ith respect to review of an order of removal . . . the following requirements apply:
>
> . . . .
>
> (9) Consolidation of questions for judicial review
> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision . . . , to review such an order or such questions of law or fact.

---

[5] In *Alonso*, the Court rejected as unpersuasive or immaterial several of the cases Respondents cite in their brief here. *Compare* 2025 WL 3083920 at *2, *with* D.N. 11, PageID.52–53. The other cases Respondents cite as to § 1252(g) (*see* D.N. 11, PageID.53–54) are distinguishable and, in any event, not binding. *See Öztürk v. Hyde*, 155 F.4th 187, 189 (2d Cir. 2025) (Menashi, J., concurring in denial of rehearing en banc) (describing the cases at issue as involving one petitioner "detained after the Secretary of State determined that his presence in the United States would have serious adverse foreign policy consequences" and another petitioner "detained after the State Department revoked her student visa on a similar basis") (internal quotation marks and citations omitted); *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *3 (4th Cir. July 1, 2025) (weighing a motion to stay involving a habeas petition alleging retaliation for First Amendment activity); *Limpin v. United States*, No. 17-CV-1729 JLS (WVG), 2019 WL 1326670, at *3–4 (S.D. Cal. Mar. 25, 2019) (dismissing a Fourth Amendment claim as arising from § 1252(g), as required under Ninth Circuit precedent, and claims under the Federal Tort Claims Act on separate grounds), *aff'd*, 828 F. App'x 429 (9th Cir. 2020); *Gupta v. McGahey*, 709 F.3d 1062, 1064–65 (11th Cir. 2013) (finding that the appellant's claims under the Fourth and Fifth Amendments alleging "wrongfully procuring a warrant for his arrest" arose from § 1252(g)); *Sissoko v. Rocha*, 509 F.3d 947, 949 (9th Cir. 2007) (concluding that detention arose from the government's "decision to commence expedited removal proceedings" and rejecting the argument that § 1252(g) should "be read to allow . . . a *Bivens* damages remedy for false arrest"); *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) (considering whether § 1252(g)'s jurisdictional bar "include[s] not only a decision in an individual case *whether* to commence, but also *when* to commence, a proceeding" (citation omitted)); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 942 n.6 (5th Cir. 1999) ("We express no opinion on the extent to which other federal statutes (most notably 28 U.S.C. § 2241) might limit the application of § 1252(g)" as to claims by an appellant subject to a removal decision).

8 U.S.C. § 1252(b)(9). Respondents argue that Severino asks the Court to address legal and factual questions about his detention that arise from the decision to remove him from the United States. (*See* D.N. 11, PageID.54–55) They also claim that Severino "challeng[es] the decision to detain [him] in the first place," thus barring jurisdiction. (*Id.*, PageID.57 (second alteration in original) (quoting *Jennings*, 583 U.S. at 294)) As explained below, these arguments are unpersuasive.

Section 1252(b)(9) applies only "[w]ith respect to review of an order of removal." 8 U.S.C. § 1252(b). Severino does not challenge an order of removal or the initial decision to detain him; instead, he challenges his continued detention without the opportunity for a bond hearing (*see* D.N. 1, PageID.15 ¶ 6), a claim that does not preclude jurisdiction. *See Helbrum v. Williams Olson*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *3 (S.D. Iowa Sep. 30, 2025); 8 C.F.R. § 1003.19(d) ("Consideration by the Immigration Judge of an application or request of a [noncitizen] regarding custody or bond" is "separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding."). In sum, the Court has jurisdiction to hear Severino's claims.

**B.    Exhaustion of Remedies**

Respondents ask the Court to "require that Severino exhaust his administrative remedies and seek a bond determination from [an] Immigration Judge." (D.N. 11, PageID.66 n.17) "Petitioners may exhaust their administrative remedies by appealing an immigration judge's decision to the Board of Immigration Appeals (BIA) before seeking a writ of habeas corpus in federal court." *Alonso*, 2025 WL 3083920, at *3 (citing *Laguna Espinoza v. Dir. of Detroit Field Off.*, No. 4:25-cv-02107, 2025 WL 2878173, at *2 (N.D. Ohio Oct. 9, 2025)). The record does not reflect that Severino has sought a bond determination by an immigration judge. In a recent similar matter, the Court waived exhaustion requirements for a habeas petitioner who had not requested a

bond hearing, finding that exhaustion was not required under the three-factor test laid out in *United States v. California Care Corp.*, 709 F.2d 1241 (9th Cir. 1983).[6] *See Salinas v. Woosley*, No. 4:25-cv-121-DJH, 2025 WL 3243837, at *2 (W.D. Ky. Nov. 20, 2025) (quoting *Alonso*, 2025 WL 3083920, at *3–4). Because the facts at issue here are "sufficiently similar" to *Salinas* and *Alonso*, the Court will waive exhaustion and consider Severino's claims. *Id.*; *Alonso*, 2025 WL 3083920, at *3–4.

### C. Immigration and Nationality Act

Severino claims that he is unlawfully detained in violation of the Immigration and Nationality Act, 8 U.S.C. §§ 1225–1226. He specifically argues that "[m]andatory detention [under § 1225(b)(2)] does not apply to those who previously entered the [United States] and have been residing in the United States prior to being apprehended and placed in removal proceedings." (D.N. 1, PageID.15–16 ¶ 11) Instead, Severino contends, "[s]uch noncitizens are detained under § 1226(a) and are eligible for release on bond." (*Id.*, PageID.16 ¶ 11) Respondents maintain that Severino is "an applicant for admission [who] is seeking admission" and thus is lawfully detained under § 1225(b)(2). (D.N. 11, PageID.62) They also argue that "an 'applicant for admission' and a person 'seeking admission' are one and the same." (*Id.*, PageID.63)

In *Alonso*, the Court considered nearly identical arguments involving the same statutory provisions and similar facts. *See* 2025 WL 3083920 at *4, *7. It therefore incorporates by reference its analysis and reasoning from that decision. *See id.* at *4–8. Here, as in *Alonso*, the

---

[6] Under the *California Care Corp.* test, the Court may require exhaustion where "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Alonso*, 2025 WL 3083920, at *3 (citations omitted).

8

petitioner is an "applicant for admission" because he is an "alien present in the United States who has not been admitted," *id.* at *5 (quoting § 1225(a)(1)), but he is not "seeking admission" because he has resided in the United States for an extended period. *See id.* at *5, *7. And he is likewise detained under § 1226(a) because he was "arrested and detained [on a warrant issued by the Attorney General] pending a decision on whether [he] [was] to be removed from the United States." *Id.* at *5 (second alteration in original) (quoting § 1226(a)); *id.* at *8.

Respondents additionally argue that the Court should afford *Skidmore* deference to the BIA's decision in *In re Yajure Hurtado*.[7] (*See* D.N. 11, PageID.58–59)  Under *Skidmore*, the "weight of [an agency's] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). The Court explained in *Alonso* why it did not agree with the reasoning in *In re Yajure Hurtado*. *See* 2025 WL 3083920 at *4–7. Moreover, the decision is not consistent with other BIA pronouncements, *see Skidmore*, 323 U.S. at 140; on the contrary, *In re Yajure Hurtado* "pivot[ed] from three decades of consistent statutory interpretation." *Pizarro Reyes*, 2025 WL 2609425, at *7; *see also id.* at *7–8 (analyzing legislative history, agency guidance, and agency practice behind the current version of § 1226(a) and finding that "[f]or almost three decades, most noncitizens who entered without inspection that were placed in standard removal proceedings received bond hearings, unless subject to an exception"). Thus, the Court will not afford *Skidmore* deference to *In re Yajure Hurtado*. *Skidmore*, 323 U.S. at 140;

---

[7] In *In re Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the BIA held that noncitizens who "surreptitiously cross into the United States" without admission or inspection are applicants for admission under § 1225(b)(2)(A). 29 I&N Dec. at 228. The BIA also concluded that immigration judges lack authority to hear bond requests of such noncitizens detained under § 1225(b)(2)(A). *Id.* at 229.

9

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (noting that deference to an agency's interpretation may be "especially warranted" where the agency's decisions have "remained consistent over time" (citations omitted)); *see also Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503, at *9 (N.D. Cal. Sep. 12, 2025) (declining to give *Skidmore* deference to *In re Yajure Hurtado* based on the BIA's "inconsistent" pronouncements and concluding that the "BIA's reasoning [in that case] lacks persuasive power").

Respondents also argue that "even if [the] Court believes the argument that 'seeking admission' under § 1225(b)(2) requires some present tense meaning, and denies that the language is simply another way of referring to aliens who are applicants for admission, the evidence before the Court is that Severino is currently actively seeking lawful admission from an immigration court." (D.N. 11, PageID.64) In support, Respondents point to Severino's Request for Disposition that he signed after being detained. (*Id.*; *see* D.N. 11-3, PageID.80) Respondents cite no authority suggesting that a request for disposition equates to "seeking admission" for purposes of the Immigration and Nationality Act, however (*see* D.N. 11, PageID.64), and the Court is aware of none. The Request is for "a hearing before the Immigration Court to determine whether [Severino] may remain in the United States." (D.N. 11-3, PageID.80) By its plain terms, the Request is not an application to enter or remain in the country lawfully, and it was not done at the United States border. Thus, it does not involve seeking admission. *See Lopez-Campos*, 2025 WL 2496379, at *6 ("Noncitizens who are just 'present' in the country—those like [the petitioner], who have been here for years upon years and never proceeded to obtain any form of citizenship (*e.g.*[,] asylum, permanent residency, refugee status, visas, etc.)—are not 'seeking' admission."); *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025) ("[T]he category of applicants for admission covered by § 1225(b)(2) who are 'seeking admission' is

10

meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering."); *cf. Santos Franco v. Raycraft*, No. 2:25-cv-13188, 2025 WL 2977118, at *7 (E.D. Mich. Oct. 21, 2025) ("And even if Respondent argues that Santos Franco is 'seeking admission' because he applied for asylum or filed a cancellation of removal, that was not done when he was 'arriving' to this country. So, the applicability of § 1225(b)(2)(A) would still be incorrect.").

Respondents cite several cases that they claim support their position.[8] (*See* D.N. 11, PageID.64–65) In *Pipa-Aquise v. Bondi*, No. 1:25-cv-01094-MSN-WBP, 2025 WL 2490657 (E.D. Va. Aug. 5, 2025), the petitioner entered the United States unlawfully in 2021 and was released from custody on parole before ICE detained him again. *Id.* at *1. The court determined that he was lawfully detained under § 1225 as an applicant for admission, but it did not consider whether he was also seeking admission. *See id.* at *1–2. Moreover, the court's analysis involved whether the petitioner's parole and renewed detention made him an applicant for admission. *See id.* For these reasons, *Pipa-Aquise* is distinguishable. In *Sandoval v. Acuna*, No. 6:25-cv-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025), the petitioner "[did] not allege that the Attorney General issued a warrant for her arrest and detention," thus "indicating that [she was] properly detained under § 1225(b) as an 'applicant for admission,' not § 1226(a)." *Id.* at *5 (citing § 1226(a)'s provision for a warrant issued by the Attorney General authorizing arrest and detention). Here, in contrast, Severino was arrested pursuant to a warrant authorized under § 1226(a). (*See* D.N. 11-4, PageID.81)

---

[8] Respondents cite *Vargas Lopez v. Trump*, No. 8:25CV526, 2025 WL 2780351 (D. Neb. Sep. 30, 2025); *Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228 (S.D. Cal. Sep. 24, 2025); and *Pena v. Hyde*, No. 25-11983-NMG, 2025 WL 2108913 (D. Mass. July 28, 2025). For the reasons explained in *Alonso*, the Court does not find these cases applicable or instructive here. *See* 2025 WL 3083920 at *7.

Respondents also point to *Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025). The petitioner in *Rojas* entered the United States without authorization approximately seven years before being detained by ICE and placed in removal proceedings without a bond hearing. *Id.* at *1. The court concluded that he was lawfully detained under § 1225(b)(2) as an applicant for admission. *See id.* at *8. But the court declined to give separate meaning to the phrase "seeking admission," finding that it "is best read as simply another way of referring to aliens who are applicants for admission." *Id.* The court also cited *In re Yajure Hurtado* as "persuasive." *Id.* at *10. Finally, the court acknowledged "the number of other district courts that have adopted [the petitioner's] position" but engaged with the reasoning of only one contrary case within the Seventh Circuit. *Id.* at *9; *see id.* at *9–10. The Court therefore declines to follow *Rojas*. Instead, consistent with its prior rulings addressing the same issue, the Court concludes that Severino is detained under § 1226(a) and is thus entitled to a bond hearing.[9] *See Salinas*, 2025 WL 3243837, at *3; *Lopez*, 2025 WL 3217036, at *3; *Alonso*, 2025 WL 3083920, at *8.

**D.    Due Process**

Severino argues that his continued detention without a bond hearing violates due process because "Respondents have not demonstrated that [he] needs to be detained." (D.N. 1, PageID.14 ¶ 3 (citing *Zadvydas*, 533 U.S. at 690)) Respondents contend that Severino is "properly detained under 8 U.S.C. § 1225(b)(2)" and thus "cannot show that his detention violates his due process rights." (D.N. 11, PageID.65) They also argue that because Severino "was given notice of the charges against him," "has access to counsel," "made no claim" regarding fear of returning to

---

[9] In light of this conclusion, Severino's request that Respondents be enjoined from moving him outside this district (D.N. 1, PageID.16) will be denied as moot. *See Alonso*, 2025 WL 3083920, at *8 n.10 (citation omitted).

12

Mexico, and "will have an opportunity to be heard by an immigration judge," he "cannot show that his detention violates any procedural due process rights." (*Id.*, PageID.66)

"Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted); *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks and citation omitted)). To determine whether civil detention violates a petitioner's due process rights, the Court applies the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under that test, the Court weighs

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Alonso*, 2025 WL 3083920, at *8 (citation omitted); *see Mathews*, 424 U.S. at 335.

"The fact that [Severino] has already received the various procedures outlined above" by Respondents "does not diminish [his] current interest—being free from allegedly unlawful detention." *Martinez-Elvir v. Olson*, No. 3:25-CV-589-CHB, 2025 WL 3006772, at *11 (W.D. Ky. Oct. 27, 2025). The first factor thus strongly favors Severino. *Id.* (citations omitted). As to the second factor, because Severino is detained under § 1226(a), he is entitled to the procedural protections provided by that statute, including the opportunity for a bond hearing before an immigration judge to determine his dangerousness or flight risk. *See* § 1226(a); 8 C.F.R. §§ 236.1(d), 1236.1(d). Because that hearing has not occurred, "the risk of erroneously depriving [Severino] of his freedom is high." *Alonso*, 2025 WL 3083920, at *9 (quoting *Lopez-Campos*,

13

2025 WL 2496379, at *9). Thus, the second factor likewise favors Severino. *Id.* Finally, while the Court "recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings," *Barrera*, 2025 WL 2690565, at *7 (citation omitted), the procedure to assess these factors as to Severino— a bond hearing—has not occurred. A hearing presents "'minimal' fiscal and administrative burdens, and 'there is an established process . . . that [the Department of Homeland Security] can readily follow here." *Alonso*, 2025 WL 3083920, at *9 (alteration in original) (quoting *Hyppolite*, 2025 WL 2829511, at *15). The third factor therefore also favors Severino. Accordingly, because all three *Mathews* factors weigh in his favor, the Court concludes that Severino's continued detention violates his due process rights. *Id.*; *Martinez-Elvir*, 2025 WL 3006772, at *13; *Barrera*, 2025 WL 2690565, at *7.

**E.    Release as a Remedy**

As for a specific remedy, Severino seeks release from ICE custody and for the Court to "order Respondents to schedule a bond hearing for [his] removal proceedings."[10] (D.N. 1, PageID.16) Respondents argue that Severino's claim that he is detained under § 1226(a) and simultaneous request for release amount to "a legal oxymoron." (D.N. 11, PageID.66) They specifically contend that "[t]he right to a bond hearing for noncitizens under § 1226 only occurs when the noncitizen is detained under § 1226" and that "[w]hen a court concludes that § 1226 is the appropriate detention statute for a habeas petitioner, it is not concluding that release is appropriate, but rather that detention is appropriate." (*Id.*, PageID.68) Respondents further

---

[10] Severino also asks the Court to "accept jurisdiction to issue a bond order." (D.N. 1, PageID.16) But "under the applicable statute and regulations, an immigration judge, not a federal district court, is designated to make such determinations." *Maldonado*, 2025 WL 2968042, at *10 (citing 8 C.F.R. § 1003.19(h)(3)). Accordingly, the Court will order that a bond hearing be provided before an immigration judge.

14

contend that ordering release and a bond hearing would "usurp[] the discretion of the immigration judge" and "invade[] the adjudication of the removal proceeding." (*Id.*, PageID.68–69)

The Court recently considered the same arguments involving the same request for relief in a similar matter. *See Salinas*, 2025 WL 3243837, at *4–5. In *Salinas*, the Court noted that "district courts, including this Court, have previously ordered both immediate release and bond hearings for habeas petitioners detained under § 1226." *Id.* at *4 (citations omitted). Although the petitioner in *Salinas* had previously been released on a type of conditional parole under § 1226, the analysis is equally applicable here because Severino has likewise "been denied the opportunity to pursue the process provided under § 1226(a) and its accompanying regulations; [he] has not received the chance for a bond hearing on the merits." *Id.* (citations omitted); *see also Maldonado*, 2025 WL 2960842, at *11 (ordering the petitioner's immediate release because he did not receive a bond hearing under § 1226(a)). Further, the Court found it proper to order a bond hearing before an immigration judge because the judge would "decide whether detention is appropriate based on the applicable regulations and a variety of factors identified by the BIA." *Salinas*, 2025 WL 3243837, at *5 (citations omitted). Therefore, the Court will order Severino's immediate release and that he be provided a bond hearing prior to any re-detention.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Respondents' motion to dismiss (D.N. 11) is **DENIED**.

(2) Severino's petition for a writ of habeas corpus (D.N. 1) is **GRANTED**. Respondents are **DIRECTED** to immediately release Severino, and, if he is arrested and re-

15

detained, provide him with a bond hearing before a neutral Immigration Judge pursuant to 8 U.S.C. § 1226(a). Respondents **SHALL** certify compliance with the Court's Order by a filing on the docket no later than **November 28, 2025**.

(3) Severino's request that Respondents be enjoined from moving him outside this district is **DENIED** as moot.

(4) Upon receipt of the notice of compliance, this matter will be **CLOSED**.

November 25, 2025

David J. Hale, Chief Judge
United States District Court